**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| ALFRED HALL | CIVIL ACTION NO. 07-1233 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| SEARS ROEBUCK & CO. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 33) filed by the defendant, Sears, Roebuck and Co. ("Sears"). Sears argues that the race discrimination, age discrimination, and state law intentional infliction of emotional distress claims alleged by Alfred Hall in his complaint should be dismissed. See id. Sears' motion is opposed by the plaintiff, Nora Hall, the Administratrix of the estate of Alfred Hall. See Record Document 39. For the reasons which follow, the Motion for Summary Judgment is **GRANTED**.

**I.  BACKGROUND.**[1]

Alfred Hall ("Hall") began his employment with Sears in the Shreveport, Louisiana store on March 31, 1972. He worked for Sears for 34 years. At the time of his termination from Sears on November 11, 2006, Hall was working in the position of consultative sales associate in the Brand Central Department. At the time of his termination, Hall was 53 years old.

Beginning in September 2006, the Store Coach, or general manager, at the Shreveport Sears store was Deborah Blanc ("Blanc"). Blanc, a white female, was 51 years

---

[1]The facts in this case are, with few exceptions, uncontested. See Record Documents 39 at 2 and 39-4. Thus, the background section of the instant ruling is adopted from the parties' statement of facts. See Record Documents 33-3 and 39-4. Specific citations to the summary judgment record are provided for all contested issues of fact.

old at the time of Hall's termination.

Sears publishes its fair employment policies to associates in a variety of ways. It displays an All-in-One poster that includes a letter from the CEO explaining the fair employment policies. It also displays a poster titled, "Harassment and Discrimination in the Workplace," which includes a corresponding tear off pamphlet regarding this policy. Further, associates are given and have access to the Associate Handbook and Code of Conduct, which contain a variety of workplace policies, including the prohibition of harassment and discrimination in the workplace. Sears' policies are also available on the company's intranet. The company's fair employment policies prohibit harassment and discrimination in the workplace, including prohibiting harassment or discrimination against any associate based on race, age, or any other reason prohibited by law. The fair employment policies advise associates that they can report any violations to their immediate supervisor or manager, to their manager's supervisor, a human resources representative, or to the "88sears line" via a toll-free number.

According to Sears, when Blanc took over as the Store Coach for the Shreveport store, she noticed that several of the store policies and procedures were not being properly followed or enforced by the employees of the store. See Record Document 33, Exhibit B at ¶ 7. Specifically, she noticed that sales employees were not calling for management approval for various transactions that required management approval and that there was a high percentage of price overrides occurring by consultative sales associates, including for Hall. See id. Nora Hall disputed these facts, stating that the Shreveport store was one of the highest performing stores and won many awards. See Record Document 39, Exhibit A at ¶ 4.

Hall's employment with Sears had not been without incident, as evidenced by six ethics cases.  See Record Document 33, Exhibit C.  Again, Nora Hall disputed this fact by noting that Hall was a man of impeccable honesty and his integrity was never questioned by his immediate supervisors.  See Record Document 39, Exhibits A and B.

Blanc conducted a training session on October 15, 2006, to review the policies and procedures for consultative sales associates.  During this training session, she reviewed Sears' policies regarding processing rebates for customers, including the requirement that a customer meet all of the criteria for sales and rebate promotions.  She made it clear to the consultative sales employees that authorizing or giving a customer a discount that did not meet the promotional criteria was prohibited and would result in discipline, up to and including termination.  Hall attended the October 15th training session, as evidenced by his signature on the attendance form.  He also attended similar training before Blanc became Store Coach at the Shreveport store.

On October 26, 2006, two customers, Lisa and Billy Eason, came to Blanc's office to lodge a complaint about a rebate and Hall.  The Easons stated that Hall was their sales person and, in the course of assisting them with their purchases, Hall obtained and completed a rebate form for them and guaranteed that they would receive a rebate of 20% of the purchase price if they purchased three or more appliances, each costing $399 or more.  Hall repeatedly assured them that they would receive the rebate, despite the fact that the Easons told him that they did not feel that they were eligible for the rebate. Based on Hall's assurances, the Easons purchased five appliances, completed the rebate form and expected to receive the 20% rebate.  After making the purchases, the Easons reviewed the rebate form in more detail, again questioning whether they were eligible for

the rebate. The Easons called Hall on the phone to discuss the rebate with him. Again, Hall promised them the rebate. The Easons were so concerned about the rebate that they returned to the Sears store to talk personally with Hall about the rebate. For a third time, Hall guaranteed the Easons they qualified for the rebate. Yet, instead of receiving the 20% rebate, the Easons received a letter from Sears explaining that they did not qualify for the rebate. The Easons were very upset, complained that Hall coerced them into buying the appliances based on false pretenses, and threatened to return all of the appliances they had purchased from Sears. The Easons felt that Hall lied to them in order to make the sale. Based on the Easons' allegations that they were promised the rebate, Jonathan Lewis, the Director of Stores, and Blanc decided to give the Easons the 20% credit, at a cost to Sears of more than $1,500.

Blanc believed that as an experienced sales associate, Hall should not have told the customers that they qualified for a rebate when they did not. See Record Document 33, Exhibit B at ¶ 12. Blanc ultimately reported the incident to the Loss Prevention Coach Angela Williams Anderson ("Anderson") to begin an investigation. On November 9, 2006, Blanc and Anderson interviewed Hall regarding the Easons' allegations. He admitted that he obtained the rebate coupon from the computer and completed it for the Easons, but stated that he did not read the coupon and mistakenly gave the coupon to the Easons, although they did not qualify for the rebate. Blanc found that Hall's explanation lacked credibility. See id., Exhibit B at ¶ 16. She believed that his actions violated Sears' policies and warranted termination. See id.

Nora Hall disputed many of these facts, stating that supervisors are aware that rebates are complex and that mistakes are often made. See Record Document 39,

Exhibits A and B. She further noted that no other Sears employee had been terminated for making such a mistake and that such mistakes simply do not warrant termination. See id.

The Sears' Workplace Conduct policy provides:[2]

**SELLING PRACTICES**
Always do you work honestly and truthfully. Never Misrepresent Sears products or services.
Sell products and services at the appropriate price. Ensure customers receive all discounts to which they are entitled. Do not provide customers discounts to which they are not entitled.

. . .

**CUSTOMER FOCUS AND RESPECT**
Treat Sears customers fairly and describe Sears products and services truthfully and accurately.
We deal fairly with everyone with whom we do business, whether a customer or associate of, investor in, or supplier to Sears. To maintain the trust and respect of our customers . . . we conduct business in an ethical manner each day. We are committed to vigorous and lawful competition based strictly on the merits of our products and services. Each associate is expected to be honest with customers. You may not mislead customers through unfair methods of competition, deceptive acts or practices, false advertising claims or misrepresentations regarding competitors.

Blanc and Anderson consulted with Johanna Hoban, a Human Resources Consultant with "88sears," in order to determine whether Hall should be terminated.[3] Blanc sent Hall's

---

[2]In its Statement of Uncontested Facts, Sears sets forth the Selling Practices and Customer Focus and Respect portions of its Workplace Conduct policy. See Record Document 33-3 at Number 32. Sears references the relevant portions of the policy as being part of the summary judgment record (Exhibit B-3 at p. 7).

The Court has reviewed Exhibit B-3 in its entirety, paying particular attention to page 7, and is unable to pinpoint the portions of the Workplace Conduct policy cited by Sears. However, the Court will assume that the Selling Practices and Customer Focus and Respect portions of the policy are true and accurate, as Nora Hall responded to Statement of Uncontested Fact No. 32 as "uncontested."

[3]The HR Consultants with 88sears serve as a resource for managers, giving guidance and approval regarding disciplining and/or terminating employees.

written statement for Johanna Hoban to review. After reviewing the statement, Johanna Hoban approved and supported Hall's termination. In addition, Jonathan Lewis,[4] the Director of Stores, and Fred Allen, the District Loss Prevention Manager, also supported the termination of Hall.[5] On November 11, 2006, Blanc met with and delivered the termination decision to Hall. Blanc completed the termination paperwork on that same date.

Hall filed a complaint about his suspension/ termination to 88sears, stating that he was being treated "unfairly," but did not specifically allege any unfair treatment because of his race or age. He admitted that he gave the Easons the 20% off coupon, but unbeknownst to him the customer did not qualify for the rebate. He acknowledged he made a mistake, the customer came in to complain, and Blanc gave the customer the 20% credit to compensate for the mistake.

According to Sears, Hall was replaced by Jack Johnson, Jr. ("Johnson"), a black male who was about 10 months older than Hall. See Record Document 33, Exhibit B at ¶ 24. Conversely, Nora Hall contends that Johnson temporarily served as a consultative sales associate and Hall's position was ultimately given to a younger, white employee. See Record Document 39, Exhibit A. Blanc further attested that she has never known of a situation similar to that of Hall, i.e., where another employee promised a customer a rebate that the customer was not eligible for. See Record Document 33, Exhibit B at ¶ 25. She stated that had she known that this happened with another employee, she would have

---

[4]Jonathan Lewis is a black male.

[5]Nora Hall further noted that Johanna Hoban, Jonathan Lewis, and Fred Allen all relied upon information provided by Blanc.

also terminated the other employee. See id. Hall once again noted that rebates are complex; mistakes occur; and that such mistakes do not warrant termination. See Record Document 39, Exhibits A and B.

Hall filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 11, 2007, stating:

> On November 11, 2006, I was discharged from my Salesperson position. I had been employed since March 31, 1972.
>
> Debbie Blanc (White), Store Manager, claimed that I knowingly lied to a customer to make a sale which resulted in a $1,500.00 loss to the company.
>
> I believe that I was discharged because of my race, Black, sex, Male and age, 53 years, in violation of Title VII of the Civil Rights Act of 19645, as amended, and the Age Discrimination in Employment Act of 1967.

He completed a Charge Questionnaire, and attached a signed statement. In the statement to the EEOC, he admitted that he "printed the coupon from the computer and provided it to the customer to mail in once the sale was complete." He further admitted that he "did not read the fine print on the coupon . . . before giving it to the customer." He also acknowledged that at the time of the termination, Blanc told him that the reason for his termination was because he lied to a customer in order to make a sale.

The EEOC issued a right to sue notice on June 14, 2007, and Hall filed this lawsuit on July 30, 2007, within the ninety day deadline for timely filing a complaint. He passed away on or about March 12, 2008. Nora Hall, his wife and the administratrix of the estate, has been substituted as the proper party plaintiff in this suit.

**II.    LAW AND ANALYSIS.**

   **A.    Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil

Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56© mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999).

**B.    Age and Race Discrimination.**

Under the Age Discrimination in Employment Act ("ADEA"), "[i]t shall be unlawful for an employer . . . to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). Title VII prohibits an employer from "discharg[ing] an individual . . . because of such individual's race." 42 U.S.C. § 2000e-2(a)(1).

A plaintiff may demonstrate age and/or race discrimination through direct evidence or by an indirect, i.e., circumstantial, method of proof. See Rachid v. Jack In The Box, Inc., 376 F.3d 305, 309 (5th Cir. 2004); Laxton v. Gap, Inc., 333 F.3d 572, 578 (5th Cir.2003). Because Nora Hall has presented no direct evidence of discrimination, the claims in the

instant matter are analyzed using the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973).  Under this framework, a plaintiff must first establish a *prima facie* case of discrimination.  See Alvarado v. Texas Rangers, 492 F.3d 605, 611 (5th Cir. 2007).  If the plaintiff satisfies this requirement, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment decision.  See id.  "The burden on the employer at this stage is one of production, not persuasion." Id.  If the employer meets this burden, "the *prima facie* case is dissolved, and the burden shifts back to the plaintiff to establish either:  (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic."  Id., citing Rachid, 376 F.3d at 312.

### 1. *Prima Facie* Case.

"To establish a *prima facie* case of age discrimination based on circumstantial evidence, a plaintiff must show that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either I) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age."  Berquist v. Washington Mut. Bank, 500 F.3d 344, 349 (5th Cir. 2007).  Likewise, in order to establish a *prima facie* case of race discrimination based on circumstantial evidence, a plaintiff must demonstrate "that he:  (1) is a member of a protected class; (2) was qualified for his position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, that others similarly situated were treated more favorably." Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512-13 (5th Cir.2001).

For purposes of summary judgment, the parties agree that Hall meets the first three requirements of a *prima facie* case for both his age and race discrimination claims. See Record Documents 36 at 10-11; 39 at 3. Thus, the Court's determination centers on the fourth requirement of Hall's *prima facie* case. In relation to the age discrimination claim, the Court must decide if there are genuine issues of material fact surrounding whether Hall was replaced by someone outside the protected class; replaced by someone younger; or otherwise discharged because of his age. See Berquist, 500 F.3d at 349. Similarly, in relation to the race discrimination claim, the Court must determine if there are genuine issues of material fact as to whether Hall was replaced by someone outside the protected class, or, that others similarly situated were treated more favorably. See Okoye, 245 F.3d at 512-13.

**Age**

Sears has presented the affidavit of Blanc, who attested that Hall was replaced by Johnson. See Record Document 33-5 at ¶ 24. Johnson was born on June 11, 1952. See id. In November 2006, he was 54 years of age. Johnson, whose affidavit was also presented by Sears, stated:

3. I became a sales associate in the Brand Central department at the Sears store in Shreveport after Alfred Hall's termination.

4. While working as an associate in the Brand Central department at the Sears in Shreveport, I was asked to assist the Auto Center in Monroe, Louisiana, for three or four days. I assisted them in straightening and running the store while the Auto Center Manager was on vacation; I was not designated as the Auto Center Manager of the Monroe store and I knew that my assisting in the Monroe Auto Center was a temporary assignment. I do not feel that my assignment to assist at the Monroe Auto Center or my return to the Shreveport store as a Brand Central associate was in any way discriminatory, i.e., based on my race and/or age.

Record Document 40, Exhibit K.

In opposing the Motion for Summary Judgment, Nora Hall has presented the affidavit of Robert Spraggins ("Spraggins"). In his affidavit, Spraggins declared:

1. I have personal knowledge of the facts stated in this Declaration. . .

2. I was employed by **SEARS** from 12/1992 until 08/2006 . . .

. . .

5. . . . Mr. Jack Johnson (African American), Auto Center manager, and the man who SEARS replaced Mr. Hall, was forced to demote to appliances due to alleged poor performance and was ultimately replaced by a white manager in that capacity. Soon thereafter Mr. Johnson was asked to temporarily run the Auto Center in Monroe, La. in the same position and capacity he was previously demoted from at Shreveport **SEARS** store.

Record Document 39-2. As required by Rule 56, Spraggins stated that his affidavit was based on personal knowledge. Yet, the Court finds that Spraggins' purported personal knowledge relating to Johnson's replacement of Hall can not be inferred from the substance of his affidavit, as he was no longer working at the Shreveport store in November 2006. See Askanase v. Fatjo, 130 F.3d 657, 673 (5th Cir. 1997) ("Moreover, the district court properly sustained the objection to Russell Harris' affidavit. While it purports to show personal knowledge on its face, there is sufficient sworn testimony to show that he does not have personal knowledge."); Doza v. American Nat. Ins. Co., 314 F.2d 230, 232 (8th Cir. 1963) ("When affidavits are offered in support of a motion for summary judgment, they must present admissible evidence, and must not only be made on the personal knowledge of the affiant, but must show that the affiant possesses the knowledge asserted."). There is simply no indication of how Spraggins acquired personal knowledge of events that occurred after his employment ended with Sears in August 2006.

Moreover, Spraggins was not identified as a witness in this case during discovery. See Record Document 40 at 5, n. 1. The defense first received notice identifying Spraggins as a witness on May 19, 2009, the date on which Nora Hall's opposition was filed and well after the close of discovery. See id.

Thus, based on the foregoing, the Court finds that Spraggins' affidavit does not create genuine issues of material fact as to whether Hall was replaced by someone outside the protected class or by someone younger. The summary judgment record establishes that Hall, who was 53 at the time of his termination, was replaced by Johnson, who was 54 at the time he replaced Hall. Moreover, Nora Hall has failed to come forward with competent summary judgment evidence demonstrating that Hall was "otherwise discharged because of his age." Berquist, 500 F.3d at 349. Accordingly, summary judgment must be granted in relation to the age discrimination claim, as Nora Hall has failed to satisfy the fourth element of the *prima facie* case.

**Race**

In relation to his race discrimination claim, the Court must consider whether Hall was replaced by someone outside the protected class or others similarly situated were treated more favorably. The Court previously found that the summary judgment record establishes that Hall, a black male, was replaced by Johnson, also a black male. Therefore, the Court must determine whether others similarly situated were treated more favorably than Hall.

To establish that others similarly situated were treated more favorably, "a plaintiff must show that the employer gave preferential treatment to another employee under nearly identical circumstances; that is, that the misconduct for which the plaintiff was discharged

was nearly identical to that engaged in by other employees." Okoye, 245 F.3d at 514 (internal citations and quotations omitted). "The conduct at issue is not nearly identical when the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer." Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 221 (5th Cir.2001).

Here, plaintiff Nora Hall has not even attempted to apply the aforementioned legal standard to the facts of this case. There is no summary judgment evidence identifying any similarly situated employees, much less similarly situated employees outside of Hall's protected group who were treated more favorably. Specifically, there has been no identification of a similarly situated employee who violated the same rule who was not terminated by Blanc. Rather, Blanc attested in her affidavit that she has never known of a similar situation, i.e., where another employee promised a customer a rebate that the customer was not eligible for. See Record Documents 33-3 at ¶ 52; 33-5 at ¶ 25. Blanc further stated that had she known of a similar situation, she would have also terminated the employee involved in that situation. See id. These facts were "contested" by Nora Hall. See Record Document 39-4 at Hall's Response to Statement No. 52. Yet, the response did not contest Blanc's statements, but declared:

> Contested. Rebates are complex matters and mistakes occur on several occasions. These types of mistakes are not matters which warrant termination. See, Affidavit of Robert Spraggins and Affidavit of Jason Williams.

Id.

Again, the Court finds that Nora Hall's proffered evidence is insufficient to create genuine issues of material fact as to whether Hall was replaced by someone outside the protected class, or, that others similarly situated were treated more favorably. Accordingly,

summary judgment must be granted in relation to the race discrimination claim, as Nora Hall has failed to satisfy the fourth element of the *prima facie* case.

### D. Intentional Infliction of Emotional Distress.

In order to recover for intentional infliction of emotional distress under Louisiana Civil Code Article 2315, "a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." White v. Monsanto Co., 585 So.2d 1205, 1209 (La. 1991). Generally, the conduct must be so outrageous and extreme that it goes beyond all possible bounds of decency and would be regarded as atrocious and utterly intolerable in a civilized community. See id. Liability under Article 2315 does not reach "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Id.

The Louisiana Supreme Court has also addressed the application of intentional infliction of emotional distress in a workplace setting, stating that such causes of action must involve patterns of deliberate, repeated harassment over a period of time. See Nicholas v. Allstate Ins. Co.,1999-2522 (La. 8/31/00), 765 So.2d 1017, 1026. Specifically, the court stated:

> The distress suffered by the employee must be more than a reasonable person could be expected to endure. Moreover, the employer's conduct must be intended or calculated to cause severe emotional distress, not just some lesser degree of fright, humiliation, embarrassment or worry.

Id. at 1027.

Here, the alleged intentional infliction of emotional distress flows from the same actions as contemplated in the race and age discrimination claims, that is, Hall's

termination for "integrity" and violation of Sears' policies despite his long term employment with Sears. See Record Document 1 at ¶15. Yet, even if the Court assumes all of Hall's allegations to be true, none of his specific complaints against Sears constitute extreme and outrageous conduct. There was no pattern of deliberate, repeated harassment against him over a period of time. Likewise, the alleged conduct of Sears, specifically Blanc, was not so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable. Accordingly, summary judgment must be granted as to the intentional infliction of emotional distress claim.

### III. CONCLUSION.

Based on the foregoing, the Court finds that plaintiff Nora Hall has failed to establish the fourth element of Hall's *prima facie* case of age and race discrimination. Moreover, the Court finds that the intentional infliction of emotional distress claim fails as a matter of law.

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment (Record Document 33) filed by Sears is **GRANTED**. All of Nora Hall's claims are dismissed with prejudice.

A judgment consistent with the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the 11th day of June, 2009.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE